IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.              ) | No.   1:21-cr-28 (APM) |
| ) | |
| LAURA STEELE, ) | |
| ) | |
| Defendant.     ) | |

**GOVERNMENT'S OPPOSITION TO
DEFENDANT'S MOTION TO RECONSIDER DETENTION**

The United States respectfully files this memorandum in opposition to Defendant Laura Steele's motion to reconsider detention. Defendant Steele plotted with her co-conspirators to stop the certification of the Electoral College vote, prepared to use violence if necessary, and stormed the Capitol. After she stormed the Capitol, she deleted records (text messages and phone logs) from her iPhone, as well as records from her Facebook account. For these reasons, the Court should maintain the order that the defendant be detained pending trial.

**I.   Background**

Video recorded on January 6, 2021, captured the defendant among a "stack" of more than a dozen individuals dressed in camouflaged para-military gear moving in a deliberate and organized manner toward the Capitol building. An additional recording shows the stack moments later embedded near the front of a violent mob that is attempting to literally break open the doors of the Capitol building. The video depicts the doors later opening and the subsequent flow of people into the building, to include the defendant and members of the stack. Selfies and surveillance video taken inside of the Capitol Rotunda further evince Defendant Steele's and her coconspirators' presence inside.

Co-defendant Jessica Watkins characterized their insurgent effort to breach the Capitol building as "forcing entry into the Capitol building" and said that it was "[f]orced. Like Rugby." On the afternoon and evening of January 6, co-defendant Graydon Young (Defendant Steele's brother) wrote on Facebook that "[w]e stormed and got inside," and co-defendant Kelly Meggs wrote in a Signal chat, "Ok who gives a damn who went in there…. We are now the enemy of the State." An hour later, Kelly Meggs wrote to the same Signal chat: "We aren't quitting!! We are reloading!!"

Based on her actions described above, on February 17, 2021, Defendant Steele was arrested on a complaint charging her with conspiracy, in violation of 18 U.S.C. § 371 (a felony); destruction of government property, in violation of 18 U.S.C. § 1361 (a felony); obstruction of an official proceeding, in violation of 18 U.S.C. § 1512(c)(2) (a felony); entering a restricted building without lawful authority, in violation of 18 U.S.C. § 1752(a) (a misdemeanor). Defendant Steele made her initial appearance in the Middle District of North Carolina the same day, and was detained pending a hearing pursuant to 18 U.S.C. § 3142(f).

On February 19, 2021, a federal grand jury in Washington, D.C., indicted Defendant Steele (along with eight co-defendants, including her brother Graydon Young) on the same four counts from the complaint.[1]

On February 23, 2021, Magistrate Judge Joe L. Webster of the Middle District of North Carolina conducted a detention hearing. On February 26, 2021, Judge Webster issued a written findings of fact and conclusions of law to support his decision that Defendant Steele be detained pending trial. Judge Webster wrote:

> [T]he Court concludes that the record establishes by clear and convincing evidence that no combination of available release conditions would

---

[1] On March 12, 2021, the grand jury handed up a second superseding indictment, adding a tenth defendant but leaving the charges as to Defendant Steele unchanged.

2

> reasonably assure the safety of the community. While the Court notes that Defendant poses a minimal risk of flight, the nature of the alleged crime poses a serious and significant threat to the community and the nation at large. Defendant is alleged to have conspired with a group of individuals to disrupt the operations of the United States Government. According to the indictment, the breach of the Capitol on January 6, 2021 necessitated the evacuation of members of the House and Senate from their respective chambers. Congress was not able to reconvene to complete the electoral college vote until 8:00 pm that evening. This disruption resulted in the assault of more than one hundred law enforcement officers defending the Capitol, millions of dollars of damage to the Capitol building, and ultimately, the death of multiple individuals. While the evidence at the hearing suggests that Defendant engaged in less physical violence than others participating in the events of that day, Defendant's breach of the Capitol building on January 6, 2021 is a far cry from the actions of one who is exercising her First Amendment right to peacefully assemble….
>
> Ultimately, Defendant has not rebutted the presumption of detention in this case, a presumption established by the nature of the charges pending against her. *See* 18 U.S.C. § 3142(e)(3)

(ECF 10; Case 1:21-mj-00061-JLW (M.D.N.C.).)

On March 18, 2021, Defendant Steele filed the instant motion.

## II.     **Legal Standard**

Defendant Steele styles her pleading as a "motion to reconsider detention," but it is unclear to the government whether she is seeking to "reopen[]" the detention hearing under Section 3142(f) based on alleged new material information, or whether she is filing a "motion for revocation or amendment" of Magistrate Judge Webster's detention order under Section 3145(b). Her pleading cites to Section 3142 (but not Section 3145), and asks for this Court's "reconsideration of Ms. Steele's pre-trial detention status." (ECF 90 at 1-2.) For that reason, it appears that she is seeking to "reopen" the detention hearing under Section 3142(f), which means she must come forward with "information that was not known to the movant at the time of the hearing and that has a

3

material bearing" on the underlying detention question. *See United States v. Lee*, 451 F. Supp. 3d 1, 5 (D.D.C. 2020).[2]

At a detention hearing, the government may present evidence by way of a proffer. *United States v. Smith*, 79 F.3d 1208, 1209-10 (D.C. Cir. 1996).

### III. Argument

#### a. Alleged "Changed" Circumstances

Here, because Defendant Steele has not articulated any significant changes to the factual findings that underpinned Magistrate Judge Webster's detention order, the Court should deny the motion for reconsideration. *See Lee*, 451 F. Supp. 3d 1 at 5.

#### b. Basis for Detention

##### i. Introduction

Defendant Steele's motion fails to recognize that there is a rebuttable presumption in favor of Defendant Steele's detention, pursuant to 18 U.S.C. § 3142(e)(3)(C). A felony charge of destroying government property under 18 U.S.C. § 1361 is an offense listed in 18 U.S.C. § 2332b(g)(5)(B), and is punishable by a term of imprisonment of up to 10 years, which falls within the statutory requirement that the predicate offense provide for punishment of "10 years or more." Because the grand jury found probable cause that the defendant committed a felony violation of Section 1361, the rebuttable presumption applies here.

Judge Webster found that the presumption applied – and that it was not rebutted. This Court should not disturb that ruling.

---

[2] If Defendant Steele is indeed moving for review under Section 3145(b), the Court should review the magistrate's release order *de novo*. *See, e.g., United States v. Tortora*, 922 F.2d 880, 883-84 (1st Cir. 1990) (district court engages in *de novo* review of contested pretrial release or detention order made by magistrate).

4

Even if the Court were to reach the merits of Judge Webster's detention decision, Defendant Steele has not proffered facts to rebut the presumption of detention, and the factors in Section 3142(g) still favor Defendant Steele's detention.[3]  None of the information presented in Defendant Steele's pleading negates that she conspired with others to stop Congress's certification of the Electoral College vote, took steps to aid this conspiracy, and then participated in the storming of the Capitol itself.

### ii.  Preparation:  Defendant Steele's Actions Prior to Storming the Capitol

On the evening of January 3, 2021, Defendant Steele emailed a membership application and vetting form to the Oath Keepers of Florida.[4]  She copied Defendant Young on the email, and wrote: "My brother, Graydon Young told me to submit my application this route to expedite the process."  Under the section for "CPT Skill Sets (Community Preparedness Team) Experience or Interests," she checked "Security."  Under "Skillsets," she wrote: "I have 13 years of experience in Law Enforcement in North Carolina. I served as a K-9 Officer and a SWAT team member. I currently work Private Armed Security for [company name redacted]. I am licensed PPS through the North Carolina Private Protective Services."

Within 10 minutes, Defendant Steele sent another email, this one directly to Defendant Kelly Meggs's email account at Proton Mail, again copying Defendant Young.  She again attached

---

[3] Moreover, the indicted crime of a Section 1361 violation is an enumerated offense under Section 2332b(g)(5)(B), and the offense was clearly calculated to "influence or affect the conduct of government by intimidation or coercion" under Section 2332b(g)(5)(A).  As such, the offense constitutes a federal crime of terrorism for purposes of evaluating the "nature and circumstances of the offense charged" under Section 3142(g)(1).

[4] The email recipient was actually a Florida Oath Keepers account at "protonmail.com."  Proton Mail is housed overseas (in Switzerland) and offers end-to-end encryption.  "Even the company hosting your emails has no way of reading them, so you can rest assured that they can't be read by third parties either." Mindaugas Jancis, *ProtonMail review: have we found the most secure email provider in 2021?*, CyberNews, Mar. 4, 2021, at https://cybernews.com/secure-email-providers/protonmail-review.

her application and vetting form, and wrote: "My brother, Graydon Young told me to send the application to you so I can be verified for the Events this coming Tuesday and Wednesday."

The following day (January 4), Defendant Steele sent the same materials to yet another Oath Keepers email address at Proton Mail. On her email, she copied co-defendants Kelly Meggs and Graydon Young.

About five hours later, Young forwarded Person One's January 4, 2021, "Call to Action" email to Defendant Steele, in which Person One wrote, "It is CRITICAL that all patriots who can be in DC get to DC to stand tall in support of President Trump's fight to defeat the enemies foreign and domestic who are attempting a coup, through the massive vote fraud and related attacks on our Republic.  We Oath Keepers are both honor-bound and eager to be there in strength to do our part."

Also on January 4, Young flew from his home in Florida to Greensboro, North Carolina, and spent the night at Defendant Steele's house.

On the morning of January 5, Young and Steele drove in Steele's family's van[5] from North Carolina to the Washington, D.C., area.  They stayed at the Holiday Inn in Springfield, Virginia, in a room paid for by Young.

In Virginia, Defendant Steele met up with others who were in the area to attend the rally on the Ellipse.  They took a selfie together inside Steele's van:

---

[5] The van is registered to Young and Steele's mother, who lives with Steele.



Importantly, the other individuals do not appear to have stormed the Capitol like Steele and Young. In fact, another individual from the group (referred to as W-1) informed the government that Steele and Young (who introduced themselves by first names but not last names) stated that they were members of the Oath Keepers and that they were in Washington, D.C., to provide security.

On the morning of January 6, Steele and Young took the Metro from Springfield, Virginia, to Washington, D.C. Below is a photo, with Steele on the left and Young on the right:



Several members of the conspiracy – as well as other members of the Oath Keepers – participated in a Signal chat titled "DC OP: Jan 6 21." The chat shows that the participants were activating a plan to use force on January 6. At approximately 1:38 p.m. that day, Person One

7

wrote, "All I see is Trump doing is complaining. I see no intent by him to do anything. So the patriots are taking it into their own hands. They've had enough." At 2:14 p.m., an individual leading the coordination of the security details run by the Oath Keepers on January 5-6 stated, "The have taken ground at the capital[.] We need to regroup any members who are not on mission." Person One then reposts that message and instructs the group: "Come to South Side of Capitol on steps" and then sends a photograph showing the southeast side of the Capitol. At 2:41 p.m., Person One posted another photograph showing the southeast side of the Capitol with the caption, "South side of US Capitol. Patriots pounding on doors[.]" At around the same time, Defendant Steele – with several of her coconspirators – was breaching the Capitol itself.

### iii. Obstructing the Certification: Defendant Steele's Actions on January 6

At around 2:20 p.m. on January 6, the U.S. Capitol Police locked down the Senate chamber to protect Vice President Pence, the senators, and staffers from the rioters that had begun to storm the Capitol and from the mob that was enveloping the building. At around 2:30 p.m., law enforcement began to evacuate Vice President Pence and senators from the Senate chamber. At about the same time, Defendant Steele and her coconspirators ascended the steps on the east side of the Capitol, pushing through and parting the crowd so that they could get closer to the doors at the top of the steps. Defendant Steele is one of several individuals in a military-style "stack" formation, with hands on each other's backs or flak jackets, some with obvious Oath Keeper insignias visible on their clothing, moving up through the crowd towards the door of the Capitol.[6] Below is a screenshot (with red arrow added to identify Defendant Steele):

---

[6] The video is available at the following link, at slide 10: https://apnews.com/article/ex-military-cops-us-capitol-riot-a1cb17201dfddc98291edead5badc257.



Members of the stack of Oath Keepers – including Defendant Steele – wearing matching uniforms consisting of camouflaged-combat attire, then aggressively approached the east doors of the Capitol. These individuals, who are wearing helmets, reinforced vests, and clothing with Oath Keeper logos and insignia, can be seen moving in an organized and practiced fashion and forcing their way to the front of the crowd gathered around a set of doors:



A close-up view of the badges on the vest of one of these individuals, seen just under the Oath Keepers emblem on his shirt, displays the Oath Keepers motto, "Not On Our Watch." The badge also says, "I don't believe in anything. I'm just here for the violence."



Then, at around 2:40 p.m., Defendant Steele, as part of the stack, and with seven of her current co-defendants, rushed through the Capitol doors and past a police officer trying to keep the crowd at bay:



With several of her coconspirators, Steele then moved into the Rotunda:



At around 2:47 p.m. – while Defendant Steele was inside the Capitol – rioters broke into the Senate chamber. At about the same time, several members of the conspiracy, along with dozens of other rioters, moved down a hallway connecting the Rotunda to the Senate chamber.[7] The rioters chanted phrases such as "Fuck McConnell," and tried to continue down the hallway to the Senate.[8] As described by co-defendant Watkins in a subsequent Parler post: "Yeah. We stormed the Capitol today. Teargassed, the whole 9. Pushed our way into the Rotunda. Made it into the Senate even. The news is lying (even Fox) about the Historic Events we created today."

---

[7] It is presently unclear if Defendant Steele was one of the members of the conspiracy who physically went down this hallway. The investigation is continuing.

[8] See https://www.liveleak.com/view?t=9ZobJ_1610107203.

Thankfully, a group of police officers in riot gear was able to push the rioters back into the Rotunda (and away from the Senate chamber) by deploying a chemical irritant.[9]

Defendant Steele remained inside the Capitol for about 25 minutes in total, until finally leaving with several of her coconspirators at around 3:05 p.m.

But Defendant Steele did not leave the area. At around 4:00 p.m., a large group – including Defendant Steele and co-defendants Kelly Meggs, Connie Meggs, and Graydon Young, other members of the stack, and other individuals wearing "Oath Keepers" clothing and insignia who stormed the Capitol – gathered around Person One and stood around waiting for at least 10 minutes in that location:

a.



---

[9] According to co-defendant Watkins's Parler post, as reported by the press: "We never smashed anything, stole anything, burned anything, and truthfully we were very respectful with Capitol Hill PD until they attacked us. . . . Then we stood our ground and drew the line." Jake Zuckerman, *Ohio bartender and her "militia" drove to D.C. to join the Capitol breach*, Ohio Capital Journal, Jan. 13, 2021, at https://ohiocapitaljournal.com/2021/01/13/ohio-bartender-and-her-militia-drove-to-d-c-to-join-the-capitol-breach/

b.



The above photographs show Defendant Steele (circled in red) with a group of several other personnel wearing tactical gear, including some with writing that says "Oath Keepers" and "Florida."

At 4:10 p.m., a participant in the Signal chat referenced above wrote, "Fight the good fight. Stand your ground." And at 4:49 p.m., a participant in the Signal chat wrote, "I got gassed and maced….I put that shit on my eggs boy…..we made a statement."

Meanwhile, at 3:47 pm, Defendant Steele's husband texted her (and others) asking, "You did[n']t storm the capital building did you?":[10]

---

[10] At the detention hearing in the Middle District of North Carolina, Defendant Steele's husband initially testified that he sent the message directly to Defendant Steele, but when confronted with this screenshot, he conceded that it "was a group thread." 2/23/21 Tr. at 29.



Defendant Steele pointedly did not respond to that accusation. Over an hour later, she simply texted that she was on the Metro.

### iv.  Concealment:  Defendant Steele's Actions After January 6

On the evening of January 6, instead of staying again at the Holiday Inn, Defendant Steele and Young drove back to Steele's home in North Carolina, arriving after midnight.

While Defendant Young was still at Defendant Steele's house, Defendant Young's photograph was displayed on the news, and it was a topic of conversation among the family members. 2/23/21 Tr. at 31-32. It was "distressing" to Defendant Steele. *Id.* at 32. By that time, she obviously knew that the FBI was seeking Defendant Young.

Defendant Young, rather than flying home to Florida from North Carolina on January 8,

changed his plans and drove home in Defendant Steele's family van. Defendant Young then arranged for the van to be shipped back to Steele's house.

Around this time, Defendant Steele started to try to cover her tracks.

*First*, Defendant Steele's clothing on January 6 – black vest, black Florida Oath Keepers t-shirt, khaki pants, black boonie hat – would have been visible on surveillance video. However, when executing a search warrant at Defendant Steele's house on February 17, the FBI could not locate these clothing items. Notably, though, the FBI observed a burn pit in Defendant Steele's backyard.

*Second*, Defendant Steele's Facebook account would have documented both her intentions prior to January 6 and her actions that day and afterwards. Yet, by her husband's admission at her detention hearing, after returning from Washington, D.C., and seeing her brother's face as a wanted man on the news, she started deleting content from her Facebook account. 2/23/21 Tr. at 32. Other individuals who lived with Defendant Steele reported the same to the FBI.

In addition, according to records obtained from Facebook, on January 8, 2021, Defendant Steele appears to have "untagged" herself in approximately 27 posts, videos, and photos on Facebook. For instance, on November 15, 2020, co-defendant Young commented on one of Defendant Steele's Facebook posts from the prior day, writing: "actually they know enough about counting to know when to stop counting and start cheating." But the substance of Defendant Steele's comment has been deleted; it is not visible in the return from either Young or Defendant Steele.

*Third*, while the FBI recovered and then searched Defendant Steele's cellphone after her arrest on February 17, 2021, much of the content had been deleted. Although the settings in the phone show that message retention is set to "forever," there are no text messages between October

15

28, 2020, and January 8, 2021. The government believes that Defendant Steele affirmatively deleted these messages, because (a) records from AT&T (Defendant Steele's carrier) show that many text messages were sent or received during this time period, and (b) the cellphone extraction report actually documents some of the deletions from January 6 (indicated by the red X's):



Moreover, Defendant Steele's phone shows no phone calls prior to January 18, 2021. But records from AT&T show that Defendant Steele initiated and received many phone calls. Importantly, co-defendant Kelly Meggs called Defendant Steele (and left a voicemail) on the

16

morning of January 7 ("Hey, this is Gator down in Florida, can you give me a call? [Phone number redacted.] Thank you."), and then Defendant Steele exchanged several phone calls with Kelly Meggs throughout January 7 (though some appear to have not been answered):



These phone calls are not reflected in the extraction from Defendant Steele's phone, suggesting that she deleted them.

## IV. CONCLUSION

For all these reasons, the government submits that Defendant Steele has not presented information that constitutes a significant change in the law or facts since Judge Webster ordered her detained. Defendant Steele has also not rebutted the presumption under Section 3142(e)(3)(C), that there are no conditions that will reasonably assure the safety of the community.

Defendant Steele's motion to reconsider detention should therefore be denied.

Respectfully submitted,

CHANNING D. PHILLIPS
ACTING UNITED STATES ATTORNEY

By: *(signature: Jeffrey Nestler)*

Jeffrey S. Nestler
Assistant United States Attorney
D.C. Bar No. 978296
Ahmed M. Baset
Troy A. Edwards, Jr.
Jeffrey S. Nestler
Kathryn Rakoczy
Assistant United States Attorneys
U.S. Attorney's Office for the District of Columbia
555 4th Street, N.W.
Washington, D.C. 20530


*/s/ Alexandra Hughes*
Alexandra Hughes
Justin Sher
Trial Attorneys
National Security Division
United States Department of Justice
950 Pennsylvania Avenue
NW Washington, D.C. 20004